IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09–cv–00947–REB–KMT

MICHAEL DUANE WINDSOR,

      Plaintiff,

v.

DR. MICHAEL DAVID AASEN, MD, and
MS. CATHIE HOLST,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case involves claims that Defendants violated Plaintiff's Eighth Amendment rights. This matter is before the court on "Defendants' Motion for Summary Judgment" (Doc. No. 19, filed September 4, 2009). Jurisdiction is asserted under 42 U.S.C. § 1983 (2009).

## STATEMENT OF THE CASE

      The following facts are taken from Plaintiff's Prisoner Complaint and the parties' submissions with respect to this Recommendation. Plaintiff alleges he has been diagnosed with several medical conditions for which he has received ongoing treatment at the Colorado Department of Corrections ("CDOC") during his incarceration. (Prisoner Compl. at 4, ¶¶ 1–5.) Plaintiff states he was seen in January 2004 by a neurologist who recommended that an MRI be done on Plaintiff's lumbar spine "as he recognized that there was a medical condition necessitating further care and/or treatment." (*Id.*, ¶ 6.) Plaintiff alleges in February 2004, before

the MRI could be done, for medical reasons he was transferred from Sterling Correctional

Facility ("SCF") to "virtual limbo at CTU-Cellhouse #5, with no effective access to medical"

until mid-April 2004, at which time he was returned to general population status at the Colorado

Territorial Correctional Facility ("CTCF"). (*Id.*, ¶ 7.) Plaintiff states on his return to general

population at CTCF, he started seeking to get the MRI done. (*Id.*, ¶ 8.) Plaintiff states the

"doctor controlling Plaintiffs [sic] medical care and/or treatment and responsible for Plaintiffs

[sic] health and well-being at 'CTCF' was defendant Dr. Michael David Aasen, MD." (*Id.*)

Plaintiff asserts Defendant Aasen originally "recognize[d] the need for the 'MRI' to be done and

did also recognize the likelihood of additional and substantial harm to Plaintiff if the 'MRI' was

not obtained so defendant Dr. Aasen did request and did obtain approval for an 'MRI' to be

done." (*Id.*, ¶ 9.) However, Plaintiff states he was informed sometime later by Defendant Aasen

that, though the MRI had been approved and an appointment had been made for Plaintiff to have

the MRI done, Plaintiff was too large to fit into the MRI machine. (*Id.*, ¶ 10.) Plaintiff states he

"made defendant Dr. Aasen aware that there are larger and even open-sided 'MRI' machines

available that would accommodate plaintiffs [sic] size." (*Id.*, ¶ 12.) Plaintiff contends

Defendant Aasen told Plaintiff he would look into scheduling the MRI in a larger machine. (*Id.*)

Plaintiff states he inquired several more times about the status of the MRI, and in

approximately December 2004, Defendant Aasen informed Plaintiff that he and Defendant Holst

had decided that the MRI would not be provided. (*Id.*, ¶ 13.) Plaintiff asserts the reasons he was

given were "1). Plaintiff is to [sic] large and does not fit into the 'MRI' machine and 2). MRI's

are only used '<u>AFTER</u>' a need for surgery has been determined as being necessary and only in

2

preparation of that surgery and not to establish a need for treatment or surgery." (*Id.*) Defendant asserts Defendant Holst "did not have the authority nor the qualifications to involve herself in the diagnostic and decision making process of Plaintiff's medical needs, care and treatment." (*Id.*, ¶ 14.) Plaintiff alleges Defendant Holst "did arbitrarily inject herself, her influence and did involve herself into the diagnostic and decision making process of Plaintiff's medical needs, care and treatment because defendant Ms. Holst was attempting to interfere with what she perceived as an attempt by Plaintiff to file another Eight 8th [sic] Amendment civil action in the near future." (*Id.*, ¶ 15.)

Plaintiff states the MRI was finally done in February 2008, and the results showed "that all 5 of Plaintiff's lumbar disc[s], L1-l5 are now bad and that the damage is so extensive surgery is no longer an option." (*Id.*, ¶ 22.) Plaintiff alleges he was told that "further degeneration can no longer be prevented." (*Id.*) Plaintiff contends that if he could have had surgery "three and half (3 ½) to four (4) years ago when only 1 or perhaps 2 disc[s] were bad, surgery could have been done and the surgery would have corrected the problem and further degeneration would have been prevented." (*Id.*, ¶ 24.) Plaintiff asserts the delay in having the MRI done "has resulted in Plaintiff's medical condition/disease to worsen and degenerate to the point as to constitute substantial harm and has caused Plaintiff to suffer unnecessarily a permanent lifelong handicap." (*Id.*, ¶ 20.) Finally, Plaintiff asserts that he is "still being denied adequate and effective pain control." (*Id.*, ¶ 29.) Plaintiff seeks compensatory damages, declaratory and injunctive relief, and punitive damages. (*Id.* at 17–18.)

## PROCEDURAL HISTORY

Plaintiff filed his Prisoner Complaint on April 24, 2009. (Compl.) Defendants filed their motion for summary judgment on September 4, 2009, on the bases that (1) Plaintiff has failed to show that Defendants acted with deliberate indifference to his serious medical needs; (2) Defendant Holst did not participate in the alleged Eighth Amendment Violation; (3) Defendants are entitled to qualified immunity; and (4) Defendants are not involved in the alleged denial of pain medication to Plaintiff. (Defs.' Mot. Summ. J.) Plaintiff filed his response on September 28, 2009. (Pl.'s Resp. to Defs.' Mot. Summ. J. [hereinafter "Resp."].) Defendants filed their reply on October 28, 2009. (Reply Br. in Supp. of Defs.' Mot. Summ. J. [hereinafter "Reply"].) This motion is ripe for review and recommendation.

## STANDARD OF REVIEW

*1.* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**2.      *Summary Judgment Standard***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable

jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### *1.       Eighth Amendment Claim*

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" for inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As a result, deliberate indifference to a prisoner's serious medical condition is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976). To establish a claim for deliberate indifference, a plaintiff must first prove that objectively, his medical need is "sufficiently serious." *Farmer*, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). Second, the plaintiff must prove that, subjectively, the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Finally, a delay in medical care "only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *See Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotation omitted). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) (citations omitted).

Importantly, a prisoner's difference of opinion with the prison's medical staff does not rise to the level of a constitutional violation. *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ("A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983."). The Tenth Circuit determined a "prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)). *See also Worrell v. Bruce*, 296 Fed. App'x 665, 670 (10th Cir. 2008) (holding the same for decision of a prison nurse). Decisions such as a preferred course of treatment are based on medical judgment and are outside of the Eighth Amendment's scope. *Callahan*, 471 F.3d at 1160 (quoting *Estelle*, 429 U.S. at 107). A difference of opinion

may amount to medical malpractice which is not actionable under Section 1983. *Braxton v. Wyandotte County Sheriff's Dep't*, 206 Fed. App'x 791, 793 (10th Cir. 2006) (citing *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). Additionally, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Defendants do not dispute that Plaintiff's medical need is sufficiently serious. Instead, they argue that Plaintiff has not met the subjective portion of the legal standard because there is no evidence that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. (Mot. Summ. J. at 8.) Defendants' motion is supported by Plaintiff's extensive medical records and the sworn affidavits of the defendants and the CTCF medical records custodian. According to the records and affidavits, Plaintiff previously had been diagnosed with various medical conditions, including acromegaly, lumbar degenerative disc disease, hormone imbalance, hepatitis C, high blood pressure, clinical depression, and elevated cholesterol. (*Id.*, Aasen Aff., ¶ 11.) Prior to Defendant Aasen's first meeting with Plaintiff, in February and March 2004, Plaintiff had been seen by Dr. Kakkar, a physician consultant. (*Id.*, ¶ 14; Compl. at 21.) Dr. Kakkar performed an EMG study and recommended that Plaintiff have an MRI of the lumbosacral spine to rule out myelopathy, or a disease within the spinal cord itself. (Compl. at 20–21.) Dr. Kakkar's request for a lumbar MRI was pending when Defendant Aasen first saw Plaintiff, and the request was approved without any input from Dr. Aasen. (Aasen Aff., ¶ 15.)

Defendant Aasen initially saw Plaintiff in May 2004. (Aasen Aff., ¶ 7; Reply, Aasen Supplemental Aff., Attach. 1 [Palma Aff.], App. I at 1 [hereainfter "App. I"].) Plaintiff was seen

about requests outlined in a letter Plaintiff presented to Defendant Aasen "that enumerated his personal comfort needs including a larger bed to accommodate his height, larger shirts, etc., and his general concern that he be physically comfortable within the prison environment."[1] (Aasen Aff., ¶ 13; App. I at 1.)  Defendant Aasen states that he "judged [Plaintiff's] condition to be mild arthritis, which is general mechanical wear and tear of the body."  (*Id.*, ¶ 14.)  Defendant Aasen did not order an MRI or follow-up on Dr. Kakkar's request for a lumbar MRI because, in his judgment, a lumbar MRI was not medically necessary because Defendant Aasen did not observe functional impairment such as neurological deficits, difficulty ambulating, severe intractable pain, or progressive radiculopathy.  (*Id.*, ¶¶ 16–17.)  Defendant Aasen states the presence of these conditions would have indicated that additional diagnostic testing was medially necessary because these conditions might indicate severe impingement on the spinal cord.  (*Id.*, ¶ 16.) Defendant Aasen states that during the time he treated Plaintiff, Plaintiff complained of aches and pains, but he never exhibited "red flag" conditions such as muscle loss, paralysis, inability to ambulate, severe intractable pain, loss of bowel or bladder control, or progressive radiculopathy that may have indicated a need for an MRI.  (*Id.*, ¶ 17.)  Defendant Aasen states he "did not believe that [Plaintiff's] subjective complaints of aches and pains, absent functional impairment, justified MRI diagnostics."  (*Id.*, ¶ 16.)

At Plaintiff's disability examination performed by Defendant Aasen on June 2, 2004, Defendant Aasen noted that Plaintiff reported "pain down to both knees suggestive of some

---

[1]This letter is not attached to Plaintiff's Complaint or any of the submissions with respect to this Recommendation.

spinal cord impingement. Has MRI of L/S area set up . . . ." (App. I at 2.) Defendant Aasen noted that Plaintiff complained of pain while flexing forward. (*Id.*) Defendant also noted that Plaintiff's "upcoming MRI will help define his c/o LBP and symptoms." (*Id.*, ¶ 3.)

On October 28, 2004, Plaintiff was seen at the chronic care clinic by Nurse Betty Esquibel. (Aasen Aff., ¶ 21; App. I at 6.) Nurse Esquibel noted that Plaintiff "was scheduled for and [sic] mri on 6/04 that does not seem that it was done." (App. I at 6.) The notes state that Plaintiff informed Nurse Esquibel that "the problem has been that he needs 'orange jump suit to fit me–and they don't have them.' Consulted with medical nurses and they indicated that he has not been scheduled due to his wt." The notes then show that Nurse Esquibel spoke to "radiology department at SMC–pt is tall enough and he should be able to get an MRI" and that "Pt needs to be scheduled for his L/S MRI at SMC." These notes are not signed or initialed by Defendant Aasen, who avers that the fact that his initials are missing from the record indicates he did not review the notes and was not aware Plaintiff had missed his MRI appointment. (Aasen Aff., ¶ 22.)

On February 3, 2005, Plaintiff was seen by Defendant Aasen and requested an update on the MRI appointment. (Reply, Aasen Supplemental Aff., Attach. 1, App. ii at 1 [hereainfter "App. ii"].) Defendant Aasen ordered special accommodations for cuffing Plaintiff's ankles and hands to prevent discomfort and also ordered restrictions on heavy lifting, prolonged sitting, and prolonged standing. (*Id.*) Defendant Aasen also ordered a second mattress. (*Id.*) The note states Plaintiff would be notified "when MRI schedule is finalized." (*Id.*)

Plaintiff was seen again by, or Plaintiff's medical charts were reviewed by, Defendant Aasen on March 4, 2005; March 16, 2004; and April 14, 2005. (*See* App. ii at 4–5, 6, 9.) There is no indication in any of these notes that the MRI was discussed by either Plaintiff or any of the medical providers who saw Plaintiff. (*See id.*) On June 15, 2005, Nurse Practitioner Connie Batson's objective neurologic evaluation indicated that Plaintiff had normal range of motion without pain in his back. (*Id.*, ¶ 26; App. ii at 10.) On December 12, 2005, Plaintiff was seen again by Nurse Practitioner Connie Batson. (*Id.*, App. ii. at 13.) Again, the notes from Plaintiff's evaluations by Nurse Practitioner Batson show no indication that Plaintiff inquired about or that Nurse Practitioner Batson discussed the delayed MRI. (*Id.*)

On January 30, 2006, Plaintiff was evaluated by Nurse Michael Lovato after Plaintiff fell in the chow hall. (Aasen Aff., ¶ 28; Reply, Aasen Supplemental Aff., Attach. 1, App. iii at 1–2.) Nurse Lovato noted no bruising or deformity in Plaintiff's lower back. (*Id.*) On May 5, 2006, another CDOC physician performed a disability evaluation on Plaintiff. (App. iii at 9–10.) This physician noted that Plaintiff "ambulates easily" and "[got] out easily to come to door." (*Id.* at 9.) Plaintiff reported "he does fine as long as he is [sic] gets his Naprosyn." (*Id.*) Again, these notes show no indication that Plaintiff inquired about or that either caregiver discussed the delayed MRI. (*Id.*)

Plaintiff was seen again by Defendant Aasen on April 24, 2007. (Aasen Aff., ¶ 33; Reply, Aasen Supplemental Aff., Attach. 1, App. iv at 2.) Plaintiff complained of joint pain in his lower back, hip, left shoulder, neck, wrist, and elbow pain, at which time Defendant Aasen issued work restrictions on bending, heaving lifting, squatting, and standing more than thirty

minutes.  (*Id.*)  Defendant Aasen also ordered x-rays on Plaintiff's shoulder, forearms, and spine.

(*Id.*)  On May 15, 2007, Defendant Aasen reviewed Plaintiff's x-rays and noted "possible

osteoporosis."  (*Id.*, ¶ 34; App. iv at 4–5.)  Defendant Aasen scheduled a bone density test and

made an appointment to review and discuss treatment with Plaintiff.  (*Id.*)  On May 22, 2007,

Defendant Aasen again examined Plaintiff and discussed Plaintiff's x-rays, low testosterone

levels, possible osteoporosis, and general aches and pains.  (*Id.*, ¶ 35; App. iv. at 7.)  On July 3,

2007, Defendant Aasen reviewed Plaintiff's laboratory results and ordered the medical staff to

"make sure that he has appt with me to review bone density."  (*Id.*, ¶ 36; App. iv at 10.)  On July

17, 2007, Plaintiff was seen again by Defendant Aasen to discuss the results of the bone density

test.  (*Id.*, ¶ 37; App. iv at 11.)  Defendant Aasen advised Plaintiff his bone density was normal

in his lumbar spine, but that he had osteopenia in his hips.  (*Id.*, App. iv at 11–12.)  Defendant

Aasen ordered accommodations for Plaintiff's medical conditions and reviewed Plaintiff's

longstanding restrictions.  (*Id.*)  Again, the notes of the records from these visits do not indicate

that Plaintiff inquired about or that Defendant Aasen discussed the MRI.  (*See* App. iv at 2, 4–5,

7, 10, 11-12.)  On November 1, 2007, Defendant Aasen was transferred to a different

correctional facility and has had no further contact with Plaintiff.  (Aasen Aff., ¶ 39.)

Defendant Aasen states he associated Plaintiff's complaints of general pain with arthritic

changes, and he treated Plaintiff accordingly, with conservative medical care.  (*Id.*, ¶¶ 14, 42.)

Defendant Aasen asserts that he determined a lumbar MRI was not medically necessary because

Plaintiff did not exhibit functional impairment and because conservative medical treatment was

adequate and effective in managing Plaintiff's pain.  (*Id.*, ¶ 40.)  Defendant Aasen avers he did

not block Plaintiff from receiving a lumbar MRI; however, Defendant Aasen states that because he did not believe the test was medically necessary, he did not seek or promote the test for Plaintiff. (*Id.*)

There is no evidence that Defendant Aasen knew of and disregarded a substantial risk of serious harm to Plaintiff. It is undisputed that Defendant Aasen treated Plaintiff for his general complaints of pain with prescription medications, diet recommendations, exercise, work restrictions, and environmental accommodations. Moreover, when Plaintiff's complaints changed, Defendant Aasen took more aggressive measures to determine the cause and ordered the medical staff to assure an appointment was scheduled for Plaintiff to review the test results.

As Defendant Aasen has supported his motion for summary judgment with references to the record showing he was not deliberately indifferent to Plaintiff's medical problems, it is Plaintiff's burden to come forward with evidence defeating the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). While Plaintiff has submitted evidence that his physical condition has deteriorated and that he is no longer a surgical candidate, the court notes that Plaintiff's condition is chronic in nature. There is no evidence that Plaintiff had an urgent need for an MRI at the time he was being seen by Defendant Aasen. The Supreme Court has found that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." *Estelle*, 429 U.S. at 107. Moreover, there is no showing that the course of treatment followed by Defendant Aasen so deviated from the standard of care as to reflect deliberate indifference. *See Smith v. Jenkins*,

919 F.2d 90, 93 (8th Cir. 1990) (plaintiff entitled to prove his case by establishing that doctor's "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel and unusual punishment").

Even if Plaintiff had set forth evidence demonstrating that another physician would have attempted to make arrangements for Plaintiff to have the MRI at an earlier date, this would not serve to create a triable issue on his Eighth Amendment claim. *See Noll v. Petrovsky*, 828 F.2d 461, 462 (8th Cir. 1987) (Plaintiff "has only shown . . . that another physician in the same circumstance might have ordered different tests and treatment. This evidence raises questions of medical judgment; it does not show deliberate indifference."). Moreover, there is no evidence that the delay in Plaintiff's receiving the MRI resulted in Plaintiff's deteriorating condition or that surgery would have been a viable option at that time. In fact, Plaintiff alleges his lumbar discs are "bad," not any condition of his spinal cord—the reason Dr. Kakkar ordered the MRI in the first instance. (Compl., ¶¶ 20–22.) As such, Plaintiff has failed to show an Eighth Amendment violation. *See Oxendine*, 241 F.3d at 1276. Finally, even if Plaintiff could establish that the harm was caused by Defendant Aasen's inaction, rather than the natural, inexorable progression of his ailment, Defendant Aasen has met his burden at the summary judgment stage by showing that he took reasonable measures to abate that harm. The undisputed facts before the court demonstrate that the Defendant examined Plaintiff many times, ordered various tests, including spinal x-rays, and prescribed various treatments for his medical conditions. While it is true that Defendant Aasen did not pursue all possible treatments, the Eighth Amendment

14

prohibition on the infliction of cruel and unusual punishment does not necessarily require him to do so. *See Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir.1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating physician, as well as his contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation."). Plaintiff's disagreement with the treatment of his medical conditions is insufficient to sustain a claim under the Eighth Amendment. *See Perkins v. Kansas Dept. of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not give rise to a claim for deliberate indifference to serious medical needs"). Here, the record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind, *i.e.*, a deliberate indifference to medical conditions. As such, Defendant Aasen is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

**2.     *Section 1983 Claims and Personal Participation***

Defendants argue that Defendant Holst did not participate in Plaintiff's medical treatment and, as such, there is no evidence she violated Plaintiff's Eighth Amendment rights. (Mot. Summ. J. at 12–14.) Defendants also assert that, to the extent Plaintiff is asserting a claim for the denial of sufficient pain medication by his current health care providers, the claim should be dismissed because neither defendant participated in the alleged wrongful conduct. (*Id.* at 15–16.)

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged

constitutional violation) (citation omitted); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir.

1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);

*Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an

essential allegation in a § 1983 claim.").

### A. *Defendant Holst - Deliberate Indifference*

Plaintiff's only allegations relating to Defendant Holst are that in approximately

December 2004, "Defendant Holst had decided that the MRI would not be provided." (Compl.,

¶ 13.) Plaintiff merely alleges that Defendant Holst "did not have the authority nor the

qualifications to involve herself in the diagnostic and decision making process of Plaintiff's

medical needs, care and treatment" (*id.*, ¶ 14) and that she "did arbitrarily inject herself, her

influence and did involve herself into the diagnostic and decision making process of Plaintiff's

medical needs, care and treatment because defendant Ms. Holst was attempting to interfere with

what she perceived as an attempt by Plaintiff to file another Eight 8th [sic] Amendment civil

action in the near future" (*id.*, ¶ 15).

Defendants assert that Defendant Holst had no role in Plaintiff's medical treatment, or in

Dr. Aasen's decision not to pursue a lumbar MRI. Defendant Holst is the Associate Director for

the Office of Legal Services, and she also serves as the Americans with Disabilities Act Inmate

Coordinator ("AIC"). (Mot. Summ. J., Holst Aff., ¶¶ 2, 3.) During the period in question, in her

role as AIC, Defendant Holst arranged for inmates claiming to have a disability to be evaluated

by health care providers. (*Id.*, ¶ 4.) A health care provider evaluated the inmate and made

recommendations to the CDOC's Chief Medical Officer regarding the inmate's disability status.

(*Id.*) The Chief Medical Officer's decision as to whether the inmate was or was not disabled was final. (*Id.*)

Defendants aver that the process of determining whether an inmate had a qualifying disability is entirely separate from the medical care an inmate received. (*Id.*, ¶ 5.) Medical providers determine what type of medical care and diagnostic tests are medically necessary for an inmate regardless of the inmate's disability status. (*Id.*) Defendant Holst states that neither she nor the Office of the AIC had any role or interest in determining what medical care or testing an inmate should, or should not, receive. (*Id.*, ¶ 6.) Defendant Holst avers she made no decisions regarding the medical care an inmate received, and she did not attempt to influence health care providers regarding what medical care, or diagnostic tests, an inmate should or should not receive. (*Id.*)

Defendants state that over the years, Plaintiff has made several claims that he has a mobility disability that required accommodation, that those claims were processed by the Office of the AIC, and that Plaintiff was then referred to a medical provider for evaluation. (*Id.*, ¶ 7.) Defendant Holst states she never advised any medical provider that Plaintiff could, or could not, have a particular medical test or procedure. (*Id.*, ¶ 8.) Defendant Holst states she never attempted to influence Plaintiff's health care provider to make a decision on what kind of medical care or tests Plaintiff should, or should not, receive. (*Id.*, ¶ 8.) Moreover, Defendant Aasen states he never spoke with Defendant Holst or her staff regarding what kind of medical treatment or testing Plaintiff should or should not receive. (Aasen Aff., ¶ 43.) Defendant Aasen avers he never received any advice, recommendations, or directives of any kind from Defendant

Holst or her staff regarding what kind of medical testing or treatment Plaintiff should, or should not, receive. (*Id.*) The records reflect that all medical decisions were made by medical personnel and not by Defendant Holst.

As the Defendants have met their burden showing an absence of evidence to support Plaintiff's allegations, the burden shifts to the Plaintiff to demonstrate triable issue. *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). Plaintiff has submitted nothing, other than his bare allegations, indicating Defendant Holst had any involvement whatsoever with medical decisions related to Plaintiff. To the contrary, the only evidence submitted by Plaintiff shows that Defendant Holst was involved only in Plaintiff's requests for accommodations related to his mobility disability and his demands for an oversized bed, open front shirts, a second mattress, mobility restrictions, special cuffing, a cane, a special chair, and a job assignment to fit his restrictions. (Compl. at 30.) Defendant Holst specifically referred Plaintiff "to work with Clinical Services to address his needs with medical restrictions when they are appropriate." (*Id.*) Plaintiff may not rest solely on his allegations, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). There is no evidence that Defendant Holst personally participated in any unconstitutional conduct. As such, Defendant Holst is entitled to summary judgment on Plaintiff's Eighth Amendment claims.

### B. Defendants Aasen and Holst - Denial of Pain Medication

Plaintiff asserts that "[n]ot as a result of Plaintiff's present doctor . . . Plaintiff is still being denied adequate and effective pain control . . . . this is the result of other medical staff …

i.e. nurses . . . and housing staff and pharmacy staff . . . ."  (Compl., ¶ 29 [ellipses in original].)

The "other medical staff" allegedly denying Plaintiff adequate and effective pain control are not

named as defendants in this lawsuit, and there are no allegations that either Defendant Aasen or

Defendant Holst has any role in the alleged denial.  Defendant Aasen was transferred to a

different correctional facility on November 1, 2007, and has had no contact with Plaintiff since

that time.  (Aasen Aff., ¶ 39) Defendant Holst makes no decisions regarding any inmate's

medical care.  (Holst Aff., ¶¶ 6, 8.)  As such, there is no evidence that either defendant has

personally participated in any current alleged denial of pain medication, and, to the extent

Plaintiff has asserted such a claim, summary judgment is properly granted in favor of

Defendants.

### 2.    *Qualified Immunity*

Defendants argue they are entitled to qualified immunity.  The doctrine of qualified

immunity shields government officials from individual liability for civil damages "insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier*

*v. Katz*, 533 U.S. 194, 121 (2001).

Because of the underlying purposes of qualified immunity, courts address qualified

immunity questions differently from other summary judgment decisions.  *Medina v. Cram*, 252

F.3d 1124, 1128 (10th Cir. 2001).  After a defendant asserts a qualified immunity defense, the

burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Id.* Plaintiff first must

establish that the facts, taken in the light most favorable to Plaintiff, show that the officer's

conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If Plaintiff establishes a

violation of a constitutional or statutory right, "the next, sequential step is to ask whether the

right was clearly established." *Id.* This determination must be made "in light of the specific

context of the case, not as a broad general proposition." *Id.* "[T]he relevant, dispositive inquiry

. . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted." *Id.* at 202. If the plaintiff fails to satisfy either part of this "heavy

two-part burden," the court must grant the defendant qualified immunity and dismiss the

deficient claims.

In a recent opinion, the United States Supreme Court altered somewhat the analytical

process that may be used when a defendant claims the protection of qualified immunity.

*Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808 (2009). In *Pearson*, the Supreme Court held

that the sequential two step analysis mandated in *Saucier* should no longer be regarded as

mandatory. The judges of the district courts and the courts of appeals should be permitted to

exercise their sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, ___ U.S. ___, 129 S. Ct. at 818. The Supreme Court noted, however, that the sequence

set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

This court already has determined Plaintiff has failed to meet the first burden of

overcoming Defendants' qualified immunity assertion because he has failed to establish a

cognizable constitutional violation. As such, the court sees no need to proceed to the second prong of qualified immunity. Defendants are entitled to qualified immunity.

WHEREFORE, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendants' Motion for Summary Judgment" (Doc. No. 19) be GRANTED, and that this case be dismissed in its entirety, with prejudice.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of*

*Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, Petitioners waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 22nd day of March, 2010.

**BY THE COURT:**

_____

Kathleen M. Tafoya
United States Magistrate Judge